JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Nancy R. McDonnell sentencing appellant Junious Sharp to a twelve-month term of incarceration for violating community control sanctions (CCS), imposed following his guilty plea to possession of drugs. He claims that, because the duration of the CCS had expired, the judge lacked the jurisdiction to find he had violated his CCS, he should not have received any prison sentence and he should not have received the maximum sentence. We vacate the judgment.
Sharp was indicted for one count of aggravated trafficking of a controlled substance, and one count of possession of drugs.[1] In January 1997, he pleaded guilty to the fifth-degree felony possession charge, with the remaining count nolled. At that time, the judge advised him that his plea could expose him to a possible prison term of six to twelve months, in monthly increments, but also told him that because of the degree of the offense, there was a presumption — but no promise — of community control sanctions and that a violation of the terms of community control sanctions could result in a prison term. On March 27, 1997, he was sentenced to two years of CCS, he was to maintain full-time employment, to participate in an in-patient drug treatment program and aftercare, undergo random drug tests, and pay costs.[2] He was not told of any consequences or specific prison term that could be imposed if these conditions were violated or not fulfilled.
In May 1997, the judge found that Sharp had violated the terms of his CCS by being discharged from his drug treatment program for marijuana usage and house infractions, and continued his CCS but ordered him to submit to an in-patient drug treatment program and warned him that another violation would result in a prison term. Another capias was issued in November 1998, because Sharp failed to report to his probation officer.[3] He was arrested on November 29, 1999, and held in the Cuyahoga County jail. For his defense at the violation hearing, Sharp contended he believed he had finished his term of CCS. The judge, however, found that, because Sharp had failed to pay court costs and the standard probation supervision fees, he had violated the terms of his CCS. She continued the CCS and ordered him to pay the costs through court community service. She told him if he paid the costs and if his probation officer consented, his probation would terminate but she repeated the threat of a prison term if he again violated the terms of his CCS. On May 27, 2000, another capias was issued when Sharp failed to comply with reporting and community service requirements previously imposed. At the September 11, 2000 hearing following execution of that warrant, Sharp admitted he had not complied. The judge found him to be unsuited for CCS, that he had violated the terms of his CCS, and stated: Felony of the third degree, I sentence you to a year, [and] give you credit for any time that you served thus far. Sharp was given sixty-four days credit, did not move to stay execution of the sentence and completed his prison term on July 9, 2001.
Before we address Sharp's assigned errors, we must respond to the State's argument that this appeal is moot because he never challenged his underlying conviction for drug possession or the finding that he violated his CCS and voluntarily (i.e. without attempting to have the sentence stayed pending appeal) completed his entire prison term. In his assignment of error number one, however, while Sharp does not substantively challenge the judge's finding that in September 2000, over two years after the CCS had expired, he violated the terms of his CCS, he challenges her jurisdiction to find that he violated CCS and was subject to imprisonment and the State's brief fails to address the issue.
The Ohio Supreme Court has held that, regardless of whether a defendant has served an entire sentence for a felony conviction, an appeal of the conviction itself does not become moot because of the obvious civil disabilities attendant to acquiring the status of a felon.[4] We are aware that whatever the outcome of this appeal, because of his conviction for drug possession, Sharp's status will remain that of a convicted felon. We, therefore, evaluate the viability of this appeal on the basis on his challenge to the judge's continuing jurisdiction and her ability to impose a prison sentence because of alleged violations of his CCS.[5]
I. The Trial Court Lacked Jurisdiction to Hold Appellant in Violation of His Community Control Sanctions Because The Period of Community Control Had Expired.
R.C. 2929.19(B)(5) requires a judge who chooses to impose CCS to notify the offender at the sentencing hearing that if the terms are violated the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code.[6]
The transcript of the sentencing hearing reveals that Sharp was not told of any penalty should he violate the terms of his CCS, much less any specific prison term. As this court stated in State v. Virasayachack: If no prison term was specified at the original sentencing, it follows that no prison term may be imposed.[7] Similarly, if Sharp was not advised of any penalty for violation of the CCS, none can be imposed.[8]
Sharp contends his CCS terminated on March 27, 1999, two years after it was imposed. The State, asserting only that this appeal is moot, does not address any of his assignments of error and provides no rebuttal. The chronology reveals: (1) March 27, 1997: original two-year CCS sentence imposed; (2) May 9, 1997: first violation found, and CCS continued, on condition that Sharp pay his costs, complete a substance abuse program, and report monthly to his probation officer; (3) November 20, 1998: second capias issued; (4) November 29, 1999: second capias arrest; (5) December 9, 1999: CCS continued again, on the condition that they would be terminated upon Sharp's satisfaction of his costs, and with monthly reporting still ordered; (6) May 27, 2000: third capias issued (with costs still unsatisfied and reporting requirement ignored again); (7) September 11, 2000: prison sentence imposed for failure to fulfill community service and reporting requirements.
On March 27, 1999, two years of CCS imposed upon Sharp had ended. What, then, could extend the duration of those controls? If he had been on probation,[9] a capias warrant for the arrest of an alleged probation violator suspends the running of the probation term through the operation of R.C. 2951.07.[10] R.C. 2951.07, however, applies exclusively to the circumstance of court-imposed probation, and does not provide authority to suspend the running of a CCS term upon the issuance of a capias warrant stemming from an alleged CCS violation.[11] Under the version of R.C. 2929.15(A)(1) in force at all times relevant to this case,[12] no provision existed to toll the CCS term for a CCS violation. As such, no tolling could have taken place, and Sharp's CCS — and the judge's jurisdiction to enforce CCS compliance — terminated on March 27, 1999, although the term was not successfully completed. Unfortunately, under the unique facts of this case, our resolution of this issue countenances the actions of a defendant who violated CCS requirements, eluded an ensuing capias until the stated term of CCS expired, and then slipped through a jurisdictional defect to escape any sanctions for his derelictions. This result, however, is dictated by the failure of R.C. 2929.15(A)(1), prior to March 23, 2000, to address the suspension of the running of a CCS term prior to a judge's resolution of a pending possible violation. The judge lost her jurisdiction to find that Sharp had violated the terms of his CCS or impose any prison sentence once the term of his CCS had expired on March 27, 1999.[13] This assignment of error has merit. Sharp's second and third assignment of error state: II. The Trial Court Erred in Sentencing Appellant to a Prison Term of One Year Where No Prison Term Had Been Specified by The Trial Court at The Time He Was Placed on Community Control Sanctions.
III. The Trial Court Erred in Sentencing Appellant to Maximum Terms (Sic) of Incarceration Without Making The Findings Required by R.C.2929.14(C) AND R.C. 2929.19(B)(2)(d). Because of our resolution of the first assignment of error we find these issues moot.[14]
Judgment vacated.
It is ordered that the appellee recover from appellant costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY TERRENCE O'DONNELL, J., DISSENTS WITH SEPARATE OPINION ANNE L. KILBANE PRESIDING JUDGE
[1] These charges were based on the allegation that Sharp had sold one Dilaudid pill to an undercover police officer.
[2] Only the journal entry claims that Sharp was to pay the standard probation supervision costs.
[3] A requirement that he report to a probation officer is not found in the sentencing transcript or journal entry, nor are several other requirements under R.C. 2929.19(B)(5).
[4] State v. Golston (1994), 71 Ohio St.3d 224, 1994-Ohio-109,643 N.E.2d 109, syllabus.
[5] State v. Wilson (1975), 41 Ohio St.2d 236, 325 N.E.2d 236 and its progeny relate only to the issue of mootness when appeals from convictions involved questions about whether a sentence had been voluntarily served. See also State v. Yates, (1991), 58 Ohio St.3d 78, 79, 567 N.E.2d 1306, and State v. Ogletree (Aug.2, 2001), Cuyahoga App. No. 78306.
[6] R.C. 2929.19(B)(5).
[7] State v. Virasayachack (2000), 138 Ohio App.3d 570 at 575,741 N.E.2d 943 at 946.
[8] R.C. 2929.19(B)(5); R.C. 2901.04(A).
[9] According to R.C. 2951.07, in relevant part, [i]f the probationer absconds or otherwise absents himself or herself from the jurisdiction of the court without permission from the county department of probation or the court to do so, or if the probationer is confined in any institution for the commission of any offense whatever, the probation period ceases to run until such time as the probationer is brought before the court for its further action.
[10] Rash v. Anderson, 80 Ohio St.3d 349, 1997-Ohio-338,686 N.E.2d 505.
[11] State v. Griffin (1998), 131 Ohio App.3d 696, 698,723 N.E.2d 606.
[12] R.C. 2929.15(A)(1) eff. 3-23-00 now provides: * * * If the offender absconds or otherwise leaves the jurisdiction of the court in which the offender resides without obtaining permission from the court or the offender's probation officer to leave the jurisdiction of the court, or if the offender is confined in any institution for the commission of any offense while under a community control sanction, the period of the community control sanction ceases to run until the offender is brought before the court for its further action. * * *
[13] State v. Yates, supra.
[14] App.R. 12(A).